Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1000 | **DATE** | 11/17/2004 |
| **CASE TITLE** | Duane O'Malley vs. Jerry Sternes | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: O'Malley's Amended Petition for Habeas Corpus is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 1 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 41 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 2004 NOV 18 AM 7:59 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOV 17 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

DUANE O'MALLEY,

    Petitioner,

v.

JERRY STERNES,

    Respondent.

Case No. 01 C 1000

Hon. Harry D. Leinenweber

**DOCKETED**

NOV 18 2004    NOV 18 2004

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Duane O'Malley's (hereinafter, "O'Malley") Amended Petition for Habeas Corpus relief pursuant to 28 U.S.C. § 2254 ("Section 2254"). In 1993, O'Malley was convicted of solicitation of murder for hire and sentenced to the statutory minimum of twenty years in prison. O'Malley's Petition challenges such conviction and sentence.

### I. DISCUSSION

O'Malley requests habeas relief on the following eight grounds:

1)  He was not proven guilty beyond a reasonable doubt in violation of his constitutional rights under the Fourteenth Amendment;

2)  He was sentenced under an unconstitutional sentencing statute in violation of the Eighth and Fourteenth Amendments;

3)  Newly discovered evidence demonstrates that he is actually innocent, and such evidence would have been revealed but for ineffective assistance of counsel;

41

4) Newly discovered evidence shows that he was entrapped by the state's paid informant, and that trial counsel was ineffective for failing to investigate and discover this evidence;

5) He was denied a fair trial and due process of law because the key prosecution witness Larry Burke committed perjury before the Grand Jury and at trial;

6) He was denied due process and a fair trial because the state failed to disclose all evidence material to the impeachment of Larry Burke;

7) He received ineffective assistance of counsel at both the trial and appellate level; and

8) He was denied of his Fourth Amendment rights where the Circuit Court of Cook County refused to credit him with time spent in custody while awaiting trial.

Before reaching O'Malley's claims, the Court first addresses the threshold issue of jurisdiction. O'Malley was in custody when he filed his original petition for habeas corpus relief in February 2001, but was released from prison on October 11, 2002 while his amended petition was still pending. However, the fact that O'Malley is no longer in prison does not necessarily render his habeas petition moot. The Supreme Court has identified this situation as an issue not of "mootness in the technical or constitutional sense, but whether the statute defining the habeas corpus jurisdiction of the federal judiciary in respect of a person in state custody is available here." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). The Supreme Court concluded that "once the federal jurisdiction has attached in the District Court, it is not

defeated by the release of the petitioner prior to completion on such application." Id. Moreover, the governing statute contemplates the possibility of relief other than immediate release from custody. Id. at 239. In essence, a petitioner's release from custody will not render the habeas petition moot if the underlying conviction continues to carry sufficient collateral consequences. Id. at 237; accord D.S.A. v. Circuit Court Branch I, 942 F.2d 1143, 1145-46 (7th Cir. 1991).

Here, O'Malley was convicted of the serious felony of solicitation of murder for hire. Such a felony carries sufficient collateral consequences to maintain his requests for relief, particularly those that go to the merits of the case. Unlike the case of a misdemeanor contempt conviction, O'Malley could be prevented from "voting, serving on a jury, obtaining a license to practice law . . . [and could] expose [him] to the possibility of an enhanced sentence" for a later criminal act. D.S.A., 942 F.2d at 1146. He is suffering, and will likely continue to suffer, a serious stigma that would be contrary to justice if his claim that he has been illegally convicted is meritorious. Therefore, the Court concludes that O'Malley's amended habeas petition is not moot, and accordingly, addresses each of O'Malley's claims in turn.

### A. Not Proven Guilty Beyond a Reasonable Doubt

O'Malley's first claim is that he was not proven guilty beyond a reasonable doubt, in violation of his due process rights.

O'Malley specifically contends that he lacked the requisite intent to commit solicitation of murder for hire and he neither commanded, requested, nor encouraged the commission of the charged offense. Essentially, O'Malley asserts that the trial court got the facts wrong. The State argues that because O'Malley did not include this claim in his petition for leave to appeal beyond his direct appeal, the issue is procedurally defaulted under O'Sullivan v. Boerkel, 526 U.S.838 (1999)(holding that failure to include an issue in a petition for leave to appeal to the Illinois Supreme Court precludes consideration of the claim in federal court on habeas review).

Even if the issue were not defaulted, however, the Court must be extremely deferential to the trial court's fact finding role. A federal court may issue a writ of habeas corpus only where the state court's adjudication resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). The record indicates that the State presented multiple witnesses that testified regarding O'Malley's intent and execution of the crime. The lone defense witness, Mrs. Wood, offered only circumstantial evidence meant to demonstrate that O'Malley was avoiding his hired hit man. A reasonable fact finder could have found that O'Malley both intended to commit and did commit the crime of solicitation of murder for hire. Accordingly,

O'Malley's Petition is denied on the theory that he was not proven guilty beyond a reasonable doubt.

### B. Sentenced Under an Unconstitutional Statute

O'Malley next claims that he was sentenced under an unconstitutional statute in violation of the Eighth and Fourteenth Amendments. O'Malley was sentenced pursuant to a statute establishing a twenty-year minimum sentence for solicitation of murder for hire. See 720 ILCS 5/8-1.2 ("Sentencing Statute"). O'Malley claims that the Sentencing Statute violates his due process and equal protection rights and the constitutional prohibition against cruel and unusual punishment. He argues that the Sentencing Statute, and therefore the sentence imposed on him, contravenes the constitutional mandate that all sentences be based upon the seriousness of the offense. He further claims that because the Sentencing Statute imposes a disproportionate sentence on individuals convicted of a solicitation of murder for hire offense compared to, for example, individuals convicted of attempted murder, individuals convicted of second-degree murder, or individuals convicted of accepting and attempting a solicitation of murder for hire, he is denied equal protection under the law. He notes that his sentence is also disproportionate to sentences imposed on individuals convicted of most specific-intent crimes involving bodily injury. Finally, he argues that the twenty-year sentence is disproportionate to the offense committed, and is

therefore prohibited by the constitutional ban of cruel and unusual punishment. The State again contends that this claim is procedurally defaulted.

Given that O'Malley is no longer in prison, this issue is most likely moot. However, even if the issue is not moot, the Court nonetheless finds O'Malley's arguments without merit. Arnold's other argument pertaining to the different sentences available to those who advertise, rather than receive, child pornography is unpersuasive. As a preliminary matter, the proper standard for a proportionality analysis is whether the sentence is "grossly disproportionate" to the crime. See Ewing v. California, 538 U.S. 11, 23 (2003). The sentencing scheme upheld in Ewing is instructive in illustrating the weakness of O'Malley's argument here. In Ewing, the defendant received a sentence of 25 years to life following his conviction for stealing three golf clubs worth $399 each. California's "three strikes" law accounted for the severity of the sentence.

Here, the Sentencing Statute is nowhere near as disproportionate and onerous as the one upheld in Ewing. Given the cold-hearted calculation involved in solicitation of murder for hire, it is within the prerogative of the legislature to deem this offense more serious than others. For example, while a person who solicits murder for hire is motivated by malice, the person who accepts and attempts that murder is generally economically

motivated. The legislature could reasonably believe the former is more culpable. Ewing instructs that courts must give great deference to reasonable legislative determinations. See id. Further, O'Malley's claim that his sentence is disproportionate to sentences imposed on individuals convicted of most specific intent crimes involving violence and/or bodily injury extraordinarily vague.

Finally, the claim that a twenty-year sentence is unconstitutionally disproportionate to the offense committed, and therefore prohibited as cruel and unusual finds no support in the law. Whether a punishment is cruel and unusual depends on evolving standards of decency. In the past, where the Supreme Court has found a punishment to be cruel and unusual, they have relied on evidence of national consensus. See, e.g., Stanford v. Kentucky, 492 U.S. 361, 362 (1989). O'Malley has not provided a scintilla of evidence relating to a national consensus that twenty year sentences for soliciting murder for hire are cruel or unusual. Nor does a sentence of twenty-years in prison seem disproportionate for hiring a hit man to kill someone. O'Malley's request for a writ of habeas corpus is therefore denied.

**C. Newly Discovered Evidence Demonstrates Actual Innocence**

O'Malley next contends that newly discovered evidence demonstrates his actual innocence. He premises this claim on the notion that but for ineffective assistance of counsel, such

evidence would have come to light. He requests an evidentiary hearing to consider the new evidence. This evidence mainly consists of statements and affidavits obtained from Larry Burke's brother and sister-in-law, as well as a long time friend of Larry's, tending to show that Burke set O'Malley up in exchange for favorable treatment from the State. O'Malley also enumerates various flaws in Burke's trial testimony as well as circumstantial evidence of Burke's relationship with the victim, Randy Crosson, claiming that trial counsel was ineffective for failing to find this information. We find that O'Malley's counsel did not render ineffective assistance, which will be discussed further under Section II(G) below. This claim fails to raise a constitutional question, and becomes substantive claim of actual innocence. In Herrera v. Collins, 506 U.S. 390, 400 (1990), Chief Justice Rehnquist stated that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for habeas relief absent an independent constitutional violations occurring in the underlying state criminal proceeding."

Additionally, the Illinois appellate court addressed O'Malley's claim that the new evidence that Larry Burke set up O'Malley was not enough to hold a post-conviction hearing on his claim of actual innocence. The court found that, even if the new evidence showed that Burke intended to frame O'Malley, none of that evidence went to O'Malley's independent intent to commit the crime,

or his state of mind. (Cook County Order 91-CR-24711 ("Order."), at 5-6). Because the standard announced in Herrera does not permit a federal court to make its own subjective determination of guilt or innocence, and because newly discovered evidence that does not amount to a constitutional violation is insufficient to warrant an evidentiary hearing, O'Malley's request for a writ of habeas corpus is denied.

### D. Newly Discovered Evidence Shows Entrapment

O'Malley's fourth claim is that newly discovered evidence shows that he was entrapped by the state's paid informant. This claim again is premised on ineffective assistance of counsel, which is discussed under in Section II(G) below. The discussion of newly discovered evidence under Section II (C), supra, applies here as well. Moreover, the appellate court noted that in Illinois, in order to raise a defense of entrapment, the defendant must admit that he committed the crime. (Order, at 5-6). At all times O'Malley has denied committing the crime. Thus, the defense of entrapment was unavailable to O'Malley and his Petition is denied on this grounds.

### E. Witness Perjury

O'Malley's fifth claim is that Larry Burke, who O'Malley characterizes as the key State's witness, perjured himself both at trial and before the Grand Jury. O'Malley documents various falsehoods and inconsistencies in Burke's testimony. In deciding

this issue, the appellate court noted that in order to establish a constitutional violation for obtaining a criminal conviction through the use of false testimony, a defendant must allege that the State knowingly used false testimony or somehow did not act diligently. (Order, at 6). The court found that O'Malley presented no evidence that the State knew of any false statements, nor was there any showing that the testimony would have affected the outcome of the trial, particularly because the inconsistencies cited by O'Malley do not go to O'Malley's intent. Id.

The Seventh Circuit has held that "the introduction of perjured testimony, without more, does not rise to the level of a constitutional violation warranting federal habeas relief." Shore v. Warden, 942 F.2d 1117, 1122 (7th Cir. 1991). It is the knowing and intentional use of such testimony by the prosecutor that is a denial of due process. Id. at 1121. Here, the state court found that O'Malley had not demonstrated any knowing use of perjury, and such finding is entitled to deference. Accordingly, O'Malley's Petition is denied.

### F. Failure To Disclose All Impeachment Evidence

O'Malley's sixth claim is that the State failed to disclose all evidence material to the impeachment of Larry Burke. The State primarily contends that this issue was procedurally defaulted when O'Malley failed to raise this claim in a proper manner in his petition for leave to appeal from the appellate court's adverse

ruling. Boerkel, 526 U.S. 838. In any event, the state court denied this claim partly on the basis that O'Malley's assertion that the State failed to make disclosures regarding benefits Burke received from the State were entirely unsupported by the unsworn affidavit of Timothy Burke that Larry Burke received money, and nothing in the record or court documents supported O'Malley's claim that a criminal complaint against Larry Burke was dismissed in exchange for his testimony in this case. Findings of fact made by the state appellate court are afforded the same presumption of accuracy as findings made by the state trial court. Milone v. Camp, 22 F.3d 693, 697 n. 2 (7th Cir. 1994). Moreover, Burke testified to receiving money from the state for "living expenses," and his criminal past was brought out for impeachment purposes as well. Because O'Malley has failed to establish adequate support for his assertions or demonstrated prejudice, his Petition on this grounds is denied.

### G. Ineffective Assistance of Counsel

O'Malley's seventh claim is that both trial and appellate counsel were ineffective for the following reasons:

    a)    Trial counsel refused to allow O'Malley to testify in his own behalf;

    b)    Trial counsel's performance was presumptively ineffective where he conceded his client's guilt during his opening statement by proclaiming to the court "[t]here is no question he wanted him dead.";

c) Trial counsel failed to investigate and present evidence of O'Malley's alcoholism, which would have allowed an affirmative defense of intoxication;

d) Trial counsel failed to adequately investigate the State's informant, Larry Burke, which would have revealed that Burke never worked for Board-Up Glass Unlimited, where Burke claimed to be working when O'Malley allegedly approached him with a murder for hire solicitation;

e) Trial counsel failed to effectively impeach Larry Burke with prior inconsistent testimony and with evidence of his history of cooperating with the State in exchange for monetary compensation;

f) Trial counsel failed to impeach Randy Crosson with evidence that Crosson had been ordered to stay away from O'Malley and that Crosson verbally assaulted O'Malley outside the courthouse immediately after trial proceedings in the instant case;

g) Trial counsel was deficient for failing to present evidence of alternate explanation of People's exhibit #2 a green slip of paper with information about Randy Crosson which would have shown that it was created for reasons totally unrelated to the solicitation charges; and

h) Appellate counsel was deficient for failing to fully investigate the facts and the law, and for failing to argue that trial counsel was ineffective.

Under Section 2254(d)(1), a writ of habeas corpus shall not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. . . ." 28 U.S.C. § 2254(d)(1). Here, the Court notes that the trial court addressed each of O'Malley's claims in a reasonable manner in its order granting the State's motion to dismiss the post-conviction

petition. There, the state court cited the applicable Supreme Court law enunciated by the Court in Strickland v. Washington, 466 U.S. 668 (1984), that a petitioner must show that counsel was so deficient that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and that but for counsel's deficient performance, the result of the proceedings would have been different. A defendant must therefore overcome a strong presumption that counsel's actions were not incompetence, but the product of trial strategy. Id.

The Court is mindful that it must be extremely deferential to defense counsel's trial strategy, so as to avoid being influenced by the benefit of hindsight, such as knowing that the strategy did not succeed. Regarding the claim that counsel was ineffective for failing to investigate and develop available defenses, the trial court noted that counsel has a duty only to make reasonable investigations or make reasonable decisions. Moreover, the evidence that O'Malley referred to was talked about at trial, and thus counsel knew of its existence, but decided instead to focus on the State's inability to prove O'Malley's state of mind. The court found that was not ineffectiveness. (Order, at 10-11). When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance claim is asserted

by a federal habeas petitioner based solely on a trial record. See Yarborough v. Gentry, 540 U.S. 1 (2003).

The State disputed many of O'Malley's specific claims by reference to the trial court's decisions. First, the trial court noted that the decision to testify is a fundamental right which rests with the defendant. In order for a defendant to claim that counsel prevented him from testifying, the defendant must have notified counsel of his desire to do so, and O'Malley here did not. The court found that O'Malley's decision not to testify was made knowingly and voluntarily. (Order, at 14-15). Second, the court stated that defense counsel made no statement conceding guilt during trial, but rather argued that O'Malley did not have the requisite state of mind to commit the offense. See id. at 15-16. Third, the evidence did not tend to show that O'Malley had been drinking, and where evidence is not strong enough to support an intoxication defense, counsel's decision to play down alcohol consumption is not ineffectiveness. See id. at 11-12. Fourth, regarding counsel's alleged failures concerning Larry Burke, whether Burke worked at Board-Up, a company, was, in fact, examined by defense counsel. See id. at 12-13. Burke testified that he received benefits from the state in exchange for testifying. See id. at 13. Moreover, the failure to discover one additional arrest would not have changed the outcome, given that Burke's criminal history was made known at trial.

Additionally, O'Malley's claim of ineffectiveness regarding the cross examinations of Randy Crosson and Larry Burke fails to recognize that whether or not to cross-examine or impeach a witness is a matter of trial strategy that will not support a claim of ineffectiveness of counsel. The failure to extract certain information from witnesses did not amount to ineffectiveness. See id. at 13. For example, revealing the history of animosity between O'Malley and Crosson could have arguably factored against O'Malley by strengthening evidence of his motive to have Crosson killed.

Finally, regarding O'Malley's claim of ineffectiveness of appellate counsel, the state court recognized that counsel is not expected to brief every conceivable issue on appeal. See id. at 15-16. The previous discussion of whether certain decisions of trial counsel amounted to ineffective assistance apply with equal force to appellate counsel, who can decide which issues to raise on appeal at their discretion as a matter of strategy.

Here, after reviewing the record, it is evident that none of the state court's decisions regarding O'Malley's ineffective assistance claim were "contrary to, or involved an unreasonable application of clearly established federal law," 28 U.S.C. § 2254(d)(1), and accordingly, those decisions are worthy of deference. O'Malley's Petition based on an ineffective assistance of counsel claim is denied.

### H. Refusal to Credit Time Spent in Custody

O'Malley's final claim is that he was denied his constitutional right under the Fourth Amendment when the Circuit Court of Cook County refused to credit him with time he spent out on bond, since his liberty was restrained as a result of the restrictions on a person on bond. The Seventh Circuit has held that placing a defendant on restrictive monitoring is not the same as physical incarceration required to receive credit for time served. See Ramsey v. Brennan, 878 F.2d 995, 996 (7th Cir. 1989). O'Malley cites nothing requiring any other result. Because the circuit court's refusal to credit O'Malley for time spent out on bond does not violate his constitutional rights. Accordingly, O'Malley's Petition is denied on such grounds.

### II. CONCLUSION

For reasons stated herein, O'Malley's Amended Petition for Habeas Corpus is **DENIED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: November 17, 2004